The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Pittman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
In addition to the stipulations contained in the aforementioned Pre-Trial Agreement, the parties furthermore stipulated that the records of Dr. Wilson could be received into evidence following the hearing. Additionally, seventy-one pages of medical records from various medical care providers were received into evidence by way of stipulation.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. In September of 1992, plaintiff worked as a certified nursing assistant for defendant. Plaintiff had been employed as a certified nursing assistant for defendant for approximately five years prior to September of 1992.
2. During 1992, plaintiff worked mostly evening and night shifts in her position as a certified nursing assistant with defendant. On September 1, 1992, plaintiff worked both the evening shift and the night shift for defendant. Plaintiff began her work at approximately 2:00 p.m. and worked until approximately 7:15 a.m. on the following day, September 2, 1992.
3. During the early morning of September 2, 1992, plaintiff ordered and consumed a breakfast sandwich which consisted of egg, ham, and cheese. Plaintiff ordered this breakfast from the hospital snack shop.
4. Plaintiff usually ate at the hospital snack shop. Plaintiff occasionally brought food from home to eat, as well. The hospital snack shop is open to the public, and both visitors and staff members can eat there. The snack shop is open twenty-four hours per day with the exception of one hour which is used to clean the snack shop.
5. Plaintiff was entitled to one-half hour of her shift to eat her meal. Plaintiff was allowed to leave her assigned floor, as well, at the hospital if she chose to do so. Plaintiff was required to clock out and clock back in if she left the hospital. Plaintiff was not required to eat at the hospital's snack shop. While there are restaurants and grocery stores within a reasonable distance of the hospital which may have been open during plaintiff's work shift, given the hour when plaintiff took her break, plaintiff usually ate in the snack shop if she did not bring food from home.
6. Plaintiff received her breakfast sandwich at approximately 2:30 a.m. and she immediately consumed it. Thereafter, plaintiff began experiencing gastrointestinal symptoms at approximately 6:30 a.m. on September 2, 1992. Plaintiff did not suspect that her symptoms came from the breakfast sandwich.
7. The breakfast sandwich which plaintiff ate on September 2, 1992 consisted of a piece of American Cheese, a freshly cooked egg, and a piece of fully cooked buffet ham. The ham for the breakfast sandwich is ordered fully cooked from a company in Raleigh and arrives in one large piece. The snack shop personnel slice it into two-ounce slices which are wrapped and kept in the freezer. The ham is removed from the freezer and placed in a refrigerator on an as-needed basis. The ham is re-heated or grilled prior to placing it in the breakfast sandwich. The breakfast sandwich is prepared when ordered by a customer.
8. Mr. Dickie Dixon, Food Service Manager at Craven Region Medical Center, was not advised by the County Health Department of any reports of food poisoning in September of 1992. Furthermore, Mr. Dixon did not receive any reports or complaints of tainted food from customers in September of 1992. Mr. Dixon did not receive any complaints about the ham products he was using in September of 1992. According to Mr. Dixon, he received no customer complaints about handling of food in the snack shop in September of 1992.
9. Plaintiff sought treatment at defendant's Emergency Room on September 7, 1992 for abdominal cramping and diarrhea she reported occurred after eating a breakfast biscuit. Plaintiff received appropriate treatment and tests were performed which revealed that plaintiff had a campylobacter jejuni infection. Campylobacter jejuni is a bacteria organism of fecal/oral transmission which can be contracted in a variety of ways and can cause significant gastrointestinal infection characterized by fevers, nausea, vomiting, and diffuse watery diarrhea. Campylobacter jejuni is a bacteria and not a toxin so that there exists a lag time at the least of one day and usually two to four days before one would develop any clinical symptoms. Campylobacter jejuni is a condition which usually treats itself, but if it does not resolve on its own, a course of antibiotics will treat the disorder and the prognosis is excellent. There is no difference in the prognosis whether the antibiotic treatment is begun immediately or at a later time. Therefore, although there was a delay in plaintiff receiving antibiotic treatment, this did not affect her long-term prognosis for an excellent recovery.
10. After being seen in the Emergency Room, plaintiff thereafter sought treatment from Dr. Reese, as well as other multiple care providers. Dr. Bounous, an expert in internal medicine, treated plaintiff in the fall of 1992. Following her evaluation of plaintiff, Dr. Bounous diagnosed plaintiff's condition as recent campylobacter jejuni infection, and possible fibromyalgia. Lab studies were performed which revealed no evidence of active bacterial gastrointestinal disorder. Dr. Bounous was of the opinion that the rapid progression of plaintiff's symptoms were more consistent with staph food poisoning; however, plaintiff had shown no signs or indications of having a staph type infection. Dr. Bounous could not relate plaintiff's campylobacter jejuni infection to eating the breakfast sandwich from defendant's snack shop on September 2, 1992, as it would be extremely unlikely for plaintiff to develop gastrointestinal symptoms related to the campylobacter jejuni infection within four hours after eating the allegedly tainted breakfast sandwich. Also as regards plaintiff's complaints of back pain and other complaints of lumps under her skin, etc., Dr. Bounous could not relate these conditions to plaintiff's campylobacter jejuni infection. While this infection may have triggered plaintiff's muscular complaints (fibromyalgia), a variety of things can "trigger" fibromyalgia including stress. Dr. Bounous noted that plaintiff was undergoing a significant amount of stress due to an injury her son had recently sustained.
11. As Dr. Bounous was unable to ascertain exactly what was causing plaintiff's complaints, she referred plaintiff to Dr. Sexton, an expert in infectious diseases at Duke University Medical Center who also evaluated plaintiff in the fall of 1992. Dr. Sexton concurred with Dr. Bounous and was also unable to relate plaintiff's campylobacter jejuni infection to eating the breakfast sandwich from defendant's snack shop on September 2, 1992. Campylobacter jejuni is an invasive organism and does not have a toxin so that its incubation period is much longer than a few hours. Dr. Sexton could not associate a four-hour incubation period with a campylobacter jejuni infection. Furthermore, Dr. Sexton could not associate plaintiff's campylobacter jejuni infection to plaintiff's muscular skeletal pain, or other complaints.
12. Thereafter, plaintiff was seen by Dr. Chmelewski, an expert in rheumatology who examined plaintiff in December of 1992 and January of 1993. While Dr. Chmelewski identified a possible association between campylobacter jejuni and interopathic arthritis, Dr. Chmelewski could not find the existence of any arthritis in plaintiff's joints. Again, the medical evidence failed to establish a causal connection between any rheumatological condition and the campylobacter jejuni bacteria. Furthermore, medical evidence does not establish any connection between campylobacter jejuni and any autoimmune disorder, such as lupus. Dr. Chmelewski was unable to attribute plaintiff's complaints to any rheumatological diagnosis.
13. Plaintiff has received extensive treatment from Dr. Wilson in Asheville, a family practitioner who specializes in environmental medicine and chelation therapy. While Dr. Wilson attributes all of plaintiff's problems to eating the sandwich at work on September 2, 1992, since plaintiff's symptoms began on the morning of September 2, 1992, Dr. Wilson, like Drs. Bounous and Sexton could not relate the campylobacter jejuni condition to the eating of the sandwich on the morning of September 2, 1992. Again, symptoms related to campylobacter jejuni could not appear within four hours of ingestion of contaminated food as it takes at the very least one day for such symptoms to appear after any ingestion of tainted food. Dr. Wilson's opinion that the conditions for which he has treated plaintiff resulted from the sandwich which she ate on the morning of September 2, 1992 being based on inaccurate assumption that such sandwich was "tainted," is not controlling in this matter. The evidence of record clearly fails to establish that the sandwich that the plaintiff ate on the morning of September 2, 1992 was "tainted."
14. Furthermore, while plaintiff contracted a campylobacter jejuni infection for which she received treatment, there is insufficient evidence of record to establish that this infection was caused by the ingestion of a breakfast sandwich on September 2, 1992.
15. Plaintiff has failed to prove that she sustained an injury by accident arising out of and in the course of her employment with defendant on September 2, 1992.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On September 2, 1992, plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant. N.C. GEN. STAT. § 97-2(6).
2. Plaintiff is, therefore, not entitled to benefits pursuant to the provisions of the North Carolina Workers' Compensation Act. N.C. GEN. STAT. § 97-2 et seq.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiff's claim must, under the law, be and is HEREBY DENIED.
2. Each side shall pay its own costs.
3. This the ____ day of April, 1997.
 S/ ___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________ COY M. VANCE COMMISSIONER
DCS:bjp